In the Matter of the **ESTATE** of Marie C. **ROMEISER**, Deceased.

Mary A. **COCKRELL**, Appellant,

v.

Ann L. **TABOR**, Individually, and as Executrix of the Estate of Marie C. Romeiser, Deceased, et al., Appellees.

No. 44849.

Court of Appeals of Oklahoma, Division No. 1.

Jan. 9, 1973.

Rehearing Denied April 24, 1973.

Released by Supreme Court for Official Publication Sept. 13, 1973.

Merton M. Bulla, Oklahoma City, and Alpheus Varner, Poteau, for appellant.

Lonnie W. Brown, McAlester, for appellee Ann L. Tabor.

William D. Mobley, Poteau, for appellee L. D. Hibdon.

ROMANG, Judge:

The last will and testament together with the codicil thereto of Marie C. Romeiser, deceased, was admitted to probate. The will was executed July 10, 1964. The codicil was executed October 29, 1969.

The will, except for four $1.00 bequests, devised ⅚th of the estate to a brother, and ⅙th to a niece, Mary A. Cockrell, and provided that if either of said devisees should predecease the testatrix, the entire estate would go to the survivor of them. The brother predeceased the testatrix, and thereafter she made the codicil in question which devises ⅓rd of her estate to each of the following: Mary A. Cockrell, Ann L. Tabor, and L. D. Hibdon.

On September 28, 1970, Ann L. Tabor, who was named as executrix in the codicil, filed a petition for probate of the will and codicil, alleging that Marie C. Romeiser had died on September 4, 1970. The niece, Mary A. Cockrell, filed a contest of codicil on October 26, 1970. The petition for probate and the contest of codicil were heard at the same time. At the close of proponents' evidence, the contestant demurred thereo, and the demurrer was overruled.

The contestant presented evidence and the hearing was continued to a future date at which time the contestant again demurred and moved for judgment. The trial judge held against the contestant and for the petitioner, admitted both the will and codicil to probate, and appointed Ann L. Tabor as administratrix.

Contestant filed a motion for new trial which was overruled, and this appeal re-

sulted. Contestant presents four propositions for reversal. We believe the second proposition dealing with the failure of the proponents to produce and examine both witnesses to the codicil, to be decisive of this appeal.

The codicil in question is typewritten. Following the dispositive provisions is the signature of the testatrix, but no other signature appears on the first page. On the second page is a self-proving affidavit, dated the same date as the codicil, and it is similar to the self-proving affidavit set forth in 84 O.S.1971, § 55, except for the use of the word "codicil" where the words "last will and testament" appear in the statutory form, and it contains the same jurat as provided in § 55. The self-proving affidavit is signed by the testatrix and two witnesses, G. E. Johnston, D. O., and L. D. Hibdon, and that is the only place where the signatures of any witnesses appear in connection with the codicil.

At the joint hearing on the petition for probate and on the contest, G. E. Johnston testified, but the other witness, L. D. Hibdon, did not, but he was represented at the hearing by separate counsel. He is the same L. D. Hibdon named as one of the devisees in the codicil.

In admitting the codicil to probate it appears that the trial judge considered it to be a self-proved instrument, as evidenced by the following statement in overruling the motion for new trial:

"THE COURT:

My original ruling was based on Doctor Johnston's testimony and what the intent of the testator was and it looks to me like she intended to make a self-proving will although it doesn't strictly meet the statutory requirements, I believe it is sufficient enough to show what her intent is and the Motion for New Trial is overruled and you are allowed an exception, sir."

The brief of L. D. Hibdon contains the following proposition:

"The codicil to the will of Marie C. Romeiser was properly offered and admitted by the court to probate as a self-proved codicil."

It is not clear from reading the record and answer brief whether the proponent, Ann L. Tabor, is claiming that the codicil is self-proved or that the self-proved affidavit takes the place of an attestation clause, or serves as both the attestation clause and self-proved affidavit. The following are excerpts from the brief of Ann L. Tabor:

"Thus witnesses need not sign twice since the attestation clause can do double duty as a combination of the attestation and self-executing provisions of the same instruments.

\*     \*     \*     \*     \*     \*

"Were we relying on it (the codicil) as a self-proved instrument, the mere identification of it without further testimony, would have raised the burden of proof requiring the Contestant to go forward with competent evidence in order to show invalidation of it by reason of lack of testamentary capacity on the part of the Testatrix, or one or more of the other alleged grounds of contest."

Both sides have cited and placed considerable reliance on the cases of In Re Estate of Cutsinger, 445 P.2d 778 (Okl. 1968), and Dillow v. Campbell, 453 P.2d 710 (Okl.1969). In Dillow at page 712, the Court said:

"Cutsinger is dispositive of the first proposition. It was there held that signatures of attesting witnesses following a sworn statement appearing as an integral part of a will, and following the dispositive or essential provisions, are sufficiently situated at the end of the will to comply with the statutory attestation provisions, 84 O.S.Supp.1965, § 55 (4). Here, as in Cutsinger, the subscribing witnesses appeared and their testimony was sufficient to support the judgment admitting the codicil to probate insofar as requisites of formality in execution are concerned under § 55 subsections 1, 2, 3, and 4. Here the efficacy of the codicil as a self proving instru-

ment is not in issue, nor was that issue before the court in the Cutsinger case, and we make no determination of that issue in this case."

In both of said cases the instrument in question was not offered for probate as a self-proving instrument, and in both cases both of the subscribing witnesses testified.

84 O.S.1971, § 19 reads as follows:

"The term 'will,' as used in this chapter, includes all codicils as well as wills."

84 O.S.1971, § 55(5) with respect to the self-proved affidavit set out therein, provides as follows:

"A self-proved will shall be admitted to probate without the testimony of any subscribing witness, but otherwise it shall be treated no differently than a will not self-proved. In particular and without limiting the generality of the foregoing, a self-proved will may be contested, revoked, or amended by a codicil in exactly the same fashion as a will not self-proved."

Huff, Oklahoma Probate Law and Practice, Section 150, in discussing 84 O.S. 1971, § 55(5), states:

"In the event there is a contest, the affidavit is not admissible and the witnesses or their depositions will have to be produced."

58 O.S.1971, § 43 provides in part as follows:

"If the will is contested, all the subscribing witnesses who are present in the county, and who are of sound mind, must be produced and examined; and the death, absence or insanity of any of them must be satisfactorily shown to the court."

It is undisputed that the second subscribing witness, L. D. Hibdon, was of sound mind, and was present in the county when the combined hearing on the petition to probate and on the contest took place. Under 58 O.S.1971, § 43, it was the mandatory duty of the proponents to produce and examine said witness. The failure of the proponents to produce and examine the second subscribing witness to the codicil, under the facts and circumstances of this case, cannot be excused by the trial court or this court. By statute, the trial court lacked authority to admit said codicil to probate.

The judgment of the trial court as relates to the admitting of said codicil to probate, is hereby reversed.

Reversed.

BAILEY, P. J., and BOX, J., concur.